FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

97 MAR 17 AM 9: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **COMBINED AERIAL TARGET FLIGHT SERVICES, INC.**, a corporation, | ] ] ] ] | |
| Plaintiff(s), | ] ] | CV-96-N-2170-NE |
| vs. | ] ] ] | |
| **TOGO D. WEST, JR.**, Secretary of the Army; **ELLIS H. BEDWELL**; and **DONALD F. CAMDEN**, | ] ] ] ] ] | ENTERED<br>MAR 17 1997 |
| Defendant(s). | ] | |

**Memorandum of Opinion**

## I.   Introduction.

A disappointed bidder for a government contract, Combined Aerial Target Flight Services, Inc. ("CAT"), has brought this action pursuant to 5 U.S.C. § 701, *et seq.*, against Togo D. West, Jr., Secretary of the Army; Ellis H. Bedwell, the procurement officer for the Department of the Army in the instant case ("Mr. Bedwell"); and Lieutenant-Colonel Donald F. Camden, Mr. Bedwell's supervisor ("Lt.-Colonel Camden"). In CAT's complaint, it asserts that the defendants illegally and fraudulently awarded a government contract to Continental RPV rather than to CAT and seeks a preliminary injunction enjoining the defendants from performing the contract and a declaratory judgment holding the contract void and awarding it to the plaintiff, or, in the alternative, a judgment in the amount of $450,000 as reimbursement for CAT's expenses incurred in the bidding process. *Complaint* at 6-7 (unnumbered pages).

The matter is presently before the court on the defendants' motion for summary judgment, filed on November 13, 1996. The motion has been briefed, and oral argument was heard at the court's motion docket on February 28, 1997. Upon due consideration, the motion will be granted and the plaintiff's claims dismissed.

## II.   Statement of Facts.[1]

On April 21, 1995, the Department of the Army, U.S. Army Missile Command ("MICOM"), issued solicitation DAAH01-95-R-0087, requesting proposals for aerial target flight services and eight[2] types of remotely piloted vehicle targets ("RPVs"). (A.R., Vol. I, Ex. A).[3] The military uses the RPVs for target practice for certain missile and anti-aircraft weapons systems. The solicitation requested proposals for a 60-day base period with five option years. The 60-day base period, which was contract line item ("CLIN") 0001, requires the contractor to design and fabricate RPVs which would undergo demonstration and qualification testing to assure they met performance requirements. Upon the government's determination that the demonstration RPVs are satisfactory, the Army has the option to order on a fixed price basis up to 300 RPVs per year, composed of any combination of the ten types of RPVs. Whether the Army exercises this option is solely at its discretion; it is under no obligation to do so. Prior to the deadline for bidder's submissions, the government made six amendments to the solicitation. (A.R., Vol. I, Exs.

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] This number was later revised to ten.

[3] "A.R." refers to the administrative record.

B-G). The solicitation originally stated that the government would award the contract to the contractor whose proposal "is judged to be the lowest cost, technically acceptable offer and which conforms to the requirements of the solicitation." (A.R., Vol. 1, Ex. A at 73).

The Army received initial proposals from CAT, Continental RPV, and Oak Leaf Enterprises ("OLE"). (A.R., Vols. III, IV). After receiving these proposals, the government issued two further amendments for clarification purposes. (A.R., Vol. I, Exs. H, I). It then conducted discussions and by November 16, 1995, received best and final offers ("BAFOs") from the three bidders. (A.R., Vol. III, Ex. W0002; Vol. IV, Exs. W0005, W0007).[4] The plaintiff's bid, at $10,878,378.00, was the lowest cost proposal, followed by OLE's bid of $17,138,662.00 and Continental RPV's bid of $21,824,429.23. (A.R., Vol II, Ex. W0012, Tab 15).

Upon evaluating the initial BAFOs, the Army identified some concerns regarding CAT's BAFO. First, the plaintiff's proposal for CLIN 0001 appeared to MICOM to be "unbalanced." CAT's offer for CLIN 0001 was $663,522.00, while OLE's was $30,616.49 and Continental RPV's was $0. According to the Army, the plaintiff's bid for CLIN 0001

> removes incentive for successful performance of CLIN 0001 and thereby substantially increases the Government's risk. Presently, the contractor could receive payment for projected performance requirements prior to

---

[4] The plaintiff asserts in its brief in opposition to the motion for summary judgment that the facts as set forth to this point in this memorandum of opinion are undisputed. It disputes the government's statement of the facts from this point in the chronology forward. *Plaintiff's Brief* at 4. CAT's dispute, however, does not appear to be with the government's version of the facts, but rather, with the government's motivation for and methodology of soliciting a second round of BAFOs. The administrative record clearly supports the government's statement of the facts; therefore, the court will view as undisputed the remaining facts as set forth in this memorandum of opinion.

3

> establishing his capability to perform the Government's established requirement before the date when such performance is required.

(A.R., Vol. I, Ex. K at 1 (unnumbered pages)). Second, the government was concerned by CAT's bid on its most expensive hardware configuration. The plaintiff had quoted the most expensive configuration at one-third the cost of one of the configuration's components. This, according to the government, would create a risk that CAT might be forced to operate at a loss and consequently fail to support the mission. *Id.* The government therefore conducted a pre-award survey at CAT's facility in Huntsville, Alabama, on December 6, 1995, so that it might gain information from the plaintiff regarding its concerns with CAT's BAFO. (A.R., Vol. I, Ex. U0001 at 1 (unnumbered pages)). At the survey, Lt.-Colonel Camden asked CAT to provide, among other things, a breakdown of its pricing. (A.R., Vol. I, Ex. U0003, Attachment 5 at 1).

The government was also concerned that the statement of work ("SOW") issued as part of the solicitation was ambiguous with regard to the need for the RPVs to be ignited remotely while in flight. Upon review, the Army determined that the SOW was, in its opinion, indeed unclear as to that requirement. (A.R., Vol. I, Ex. K at 1 (unnumbered pages)). Furthermore, government contracting officials determined that other problems existed with the solicitation. These included: (1) an inappropriate and unallowable definition as to how MICOM would determine the lowest cost offer; (2) phrasing in the solicitation that would mistakenly allow the government to be charged for two missions in certain situations when the government intended to pay for only one; (3) a definition "lost rate" that included losses beyond the contractor's control that consequently would increase

4

the contractor's potential liability; (4) language in the solicitation with regard to requalification that would improperly require the Army to fund the contractor's requalification costs; and (5) the necessity to add a provision allowing disqualification of unbalanced bids. (A.R., Vol. II, Legal Reviews dated January 11, 1996, and January 12, 1996, Tab 17).

As a result of the government's concerns regarding the solicitation language and the initial BAFOs received, the Army issued Amendment Nine to the solicitation on January 30, 1996, requesting second BAFOs by February 28, 1996. (A.R., Vol. I, Ex. L). Among other things, this amendment revised the price evaluation of targets to reflect the target's "most likely usage." *Id.* This figure, however, was not disclosed to the bidders. (A.R., Vol. I, Ex. M., Paragraph A-1). The contract would then be awarded to the bidder with the lowest evaluated cost, using the most likely usage figures for each target, for a technically acceptable offer. All three initial bidders submitted second BAFOs. (A.R., Vol. III, Ex. W00003; Vol. IV, Exs. W0006, W0007). The Army found all three proposals to be technically acceptable.

On April 8, 1996, the Army proposed awarding the contract to Continental RPV, which submitted the lowest evaluated cost, technically acceptable second BAFO. (A.R., Vol. I, Ex. Q at 3). CAT filed a protest with Army Material Command ("AMC") on April 27, 1996, focusing on seven issues: MICOM's request for second BAFOs, CAT's balanced pricing approach, alteration of the pricing evaluation, the pre-award survey at CAT's Huntsville, Alabama facility, the timing of pre-award survey, MICOM's alleged disclosure of CAT's first BAFO pricing methodology, and MICOM's alleged coercion of CAT to

5

change its pricing for the second BAFO. (A.R., Vol. I, Ex. U0003 at 1-2). The plaintiff submitted a supplemental letter on May 22, 1996, which AMC treated as a new protest. (A.R., Vol. I, Ex. U0006 at 1 (unnumbered pages)). AMC dismissed both protests on May 30, 1996. (A.R., Vol. I, Ex. U0009). CAT then filed its protest with the General Accounting Office ("GAO") on May 29, 1996, citing the same seven areas of concern. (A.R., Vol. I, Ex. U0008). On June 12, 1996, the GAO dismissed the protest as untimely. (A.R., Vol. I, Ex. U0010). The plaintiff filed a second protest with the GAO that was dismissed as untimely on July 1, 1996. (A.R., Vol. I, Ex. U0014). CAT's final protest to the GAO was again dismissed as untimely on July 24, 1996. (A.R., Vol. I, Ex. U0016).

### III. Standard of Review.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

6

*Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV. Discussion.**

    **A. Estoppel and Waiver.**

The defendants argue in their motion for summary judgment that "the plaintiff's claims should be barred because it failed to object [to the Army's decision to request second BAFOs] in a timely manner." *Defendants' Memorandum* at 23. Amendment Nine to the solicitation was issued on January 30, 1996. The amendment requested second

BAFOs by February 28, 1996, and revised the price evaluation of the targets to reflect their most likely usage, a figure which was not revealed by MICOM to the bidders. CAT, Continental RPV, and OLE each submitted to the Army a second BAFO by the deadline. Because Continental RPV's second BAFO was the lowest evaluated cost, technically acceptable offer, the government awarded the contract to Continental RPV.

"Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when his conduct with regard to that claim is contrary to his position." *In re Garfinkle*, 672 F.2d 1340, 1346-47 (11th Cir. 1982). "Silence or acquiescence may be sufficient conduct to create an estoppel if under the circumstances there was both a duty and opportunity to speak." *Id.* at 1347. "The related concept of waiver is the intentional relinquishment of a known right. . . . Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit. Waiver may be express, or . . . implied from conduct." *Id.*

Regulations governing bid protests to the GAO establish that "alleged improprieties [in a solicitation] which do not exist in the initial solicitation but which are subsequently incorporated into the solicitation must be protested not later than the next closing time for receipt of proposals following the incorporation." 4 C.F.R. § 21.2(a)(1). The Code of Federal Regulations further provides that the GAO may dismiss untimely protests. 4 C.F.R. § 21.2(b).

All of CAT's protests to the GAO were dismissed by that agency as untimely. For example, in the GAO's June 12, 1996, dismissal, it ruled CAT's protest untimely "because it challenges an alleged solicitation impropriety - that being, the request for a second round of BAFOs - which should have been protested before February 28, [1996] when second BAFOs were due" and cites 4 C.F.R. § 21.2(a)(1) as support for its determination. (A.R., Vol. I, Ex. U0012 at 2). This court is not bound by the GAO decision but "should be extremely reluctant to overturn" it. *Latecoere Intern., Inc. v. U.S. Dept. of the Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994) (quoting *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1272 (5th Cir. 1978)).

CAT knew of the Army's decision to obtain second BAFOs pursuant to its solicitation for bids and its reasons for doing so on January 30, 1996, when the government issued Amendment Nine to the solicitation. According to the regulations, therefore, CAT's right to protest arose at that time, and it had until February 28, 1996, the deadline for submission of the second BAFOs, to exercise that right. *See* 4 C.F.R. § 21.2(a)(1). It did not do so; rather, it chose to waive that right, submit a second BAFO, and take a chance that it would be awarded the contract. It was only once it learned that it had failed to submit the lowest cost, technically acceptable bid that it chose to file a protest with AMC and later with the GAO. As the defendants characterize it, the "plaintiff wants to have two bites at the apple." *Defendants' Memorandum* at 23. This CAT cannot equitably do. CAT had a duty under the Code of Federal Regulations to file a timely protest if it so desired, and now that it has waived that duty, it is estopped from pursuing an alternative remedy.

## V. Conclusion.

The plaintiff waived its right to protest the manner in which MICOM handled solicitation DAAH01-95-R-0087 on February 28, 1996, and is now estopped from seeking a remedy from the court. Accordingly, the defendants' motion for summary judgment will be granted and the plaintiff's claims dismissed. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __14th__ of March, 1997.

                                               EDWIN L. NELSON
                                    UNITED STATES DISTRICT JUDGE